FILED
 2012 Jan-05 PM 04:38
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **LOU ANN MADDOX,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CASE NO. 1:09-CV-2212-RRA |
| | ) |
| **GRIMMER REALTY,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

On March 11, 2011, the Magistrate Judge filed his Report and Recommendation, (doc. 12),[1] recommending defendant's Motion to Dismiss, (doc. 4), be granted as to all of plaintiff's claims except her retaliation claim. Plaintiff filed her Written Objections to Magistrate's Order on Motion to Dismiss.[2] (Doc. 14.) Based upon the court's consideration of all the materials in its file, including the Report and Recommendation, the court is of the opinion that plaintiff's Objections, (doc. 14), are due to be sustained, the Magistrate Judge's Report and Recommendation, (doc. 12), is due to be rejected, and defendant's Motion to Dismiss, (doc. 4), is due to be denied.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2] Neither party filed an objection to the Magistrate Judge's Recommendation that defendant's Motion to Dismiss should be denied as to plaintiff's retaliation claim. Therefore, this part of the Report and Recommendation will be adopted without objection.

## I. STANDARD OF REVIEW

Plaintiff filed timely objections to the Magistrate Judge's Report and Recommendation; therefore, this court's review is governed by 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  Under this standard, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3)("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").  "As the use of the phrase de novo implies, the district court's consideration of the [disputed facts] must be independent and based upon the [evidence] before the court."  *Ekokotu v. Federal Exp. Corp.*, 408 Fed. Appx. 331, 336 n.3 (11th Cir. 2011)(quoting *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988)).  The court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.").

## II. STATEMENT OF FACTS

According to plaintiff, her "Complaint contains twenty-one detailed factual contentions setting forth the basis for her claims." (Doc. 6 at 1 and n.1.)  She contends:

2

In her Complaint Plaintiff states that she is of Native American heritage. [(Doc. 1 ¶¶ 4, 6.)] She began working for Defendant in September 2007, as a Security Guard at its Quintard Mall location. [(*Id*. ¶ 7.)] Plaintiff details her job history, explaining that she first moved to a Maintenance position, and then, around March 2008, she became a second shift Supervisor in Housekeeping. [(*Id*. ¶ 8.)] Plaintiff's Complaint also states that in March 2008, Glen Allgood became the new Operations Manager, and that is when the discrimination started – thus defining the liability period from March 2008 until her January 2009 discharge. [(*See id*. ¶¶ 9, 11, 22.)]

As explained in the Complaint, Allgood asked Plaintiff what race she was and Plaintiff informed him that she was part Native-American. [(*Id*. ¶ 10.)] The Complaint then states that "(s)oon thereafter, Allgood began making derogatory comments to Plaintiff such as calling her a "Cherokee squaw," asking her to perform a rain dance to help the grass grow, calling her a "savage", asking her how to scalp people, and asking her if she carried a bow and arrow for protection. [(*Id*. ¶ 11.)]

In its motion to this Court, Defendant makes its first erroneous representation to this Court. Defendant writes "Plaintiff alleges a handful of 'derogatory comments' – literally five comments . . . ." [(Doc. 4 at 1.)] However, Plaintiff's Complaint does not state that Allgood *only* made five derogatory comments to her. Rather, she states that Allgood made derogatory comments to her and went on to give some examples of the type of comments. Nothing in Plaintiff's Complaint indicates Plaintiff has provided an exhaustive list. Nor does Plaintiff's Complaint state that Allgood only called her each of those names a single time.

Plaintiff's Complaint goes on to provide additional factual details. In particular, Plaintiff's Complaint states that she heard Manager Allgood use racial slurs when referring to African-Americans. [(Doc. 1 ¶ 12.)] Plaintiff states in her Complaint that she told Allgood she did not appreciate him using that kind of language. [(*Id*.)] The next month, April 2008, Allgood learned Plaintiff was dating an African-American man, and Allgood began making statements that Plaintiff did not fit in with his kind (white people). [(*Id*. ¶ 13.)] Plaintiff's Complaint makes these specific allegations.

Plaintiff then details further complaints she made to Allgood. In particular, her Complaint states that she let Allgood know that one of the African-American employees reporting to her had complained about being discriminated against. [(*Id.* ¶ 14.)] Plaintiff further states in her Complaint

3

that she had complained of race discrimination to Mall Manager Amy Stone, and it states that she provided Manager Stone with details on how she had been discriminated against. [(*Id*. ¶ 15.)]

Next, Plaintiff's Complaint goes on to describe how Defendant began retaliating against her. Her Complaint states that after she complained, Defendant retaliated against Plaintiff by moving her to third shift floor crew in July 2008, stating she needed to work with her own kind (there are no white housekeeping employees on third shift). [(*Id*. ¶ 16.)] Plaintiff explains in her Complaint how Defendant further retaliated against her by taking her supervisor job from her and putting her on the "floor crew." [(*Id*. ¶ 17.)]

Further detailing facts supporting her retaliation claim, Plaintiff's Complaint states that Defendant constantly changed Plaintiff's scheduled reporting times, trying to force her to quit. [(*Id*. ¶ 19.)] Also, Manager Allgood told Plaintiff she was forbidden from being at the mall unless clocked into work. [(*Id*.)] And what amounts to direct evidence of retaliation, Plaintiff's Complaint details that she was told by management that if she complained to management or the owner she would be fired. [(*Id*. ¶ 20.)]

And Plaintiff's Complaint goes on to state additional elements of her race discrimination claim, specifically stating that Defendant replaced Plaintiff in the supervisor job [with] a white employee named Drenda Rogers. [(*See id*. ¶ 18.)]

Next, Plaintiff's Complaint provides further details supporting her retaliation claim by specifically stating that she filed an EEOC Charge on December 19, 2008. [(*Id*. ¶ 21.)] Shortly after Defendant received Plaintiff's EEOC Charge, Defendant fired Plaintiff on Friday, January 23, 2009. [(*Id*. ¶ 22.)]

Plaintiff's Complaint goes on to provide further details stating that Defendant alleges it terminated Plaintiff for threatening to blow up the mall. [(*Id*. ¶ 24.)] However, in her Complaint, Plaintiff specifically denies making any such threat. [(*Id*.)] Plaintiff further states in her Complaint that Defendant refused to inform Plaintiff of the source of her alleged threats. [(*Id*.)] Plaintiff explains in her Complaint that Defendant fired her in retaliation for complaining of discrimination, engaging in protected activity and filing an EEOC Charge. [(*Id*. ¶ 25.)] The Complaint states that the two people mentioned in Plaintiff's EEOC Charge, Mall Manager Amy Stone and Operations Manager, Glen Allgood, fired Plaintiff. [(*Id*.)] And finally, again

providing additional evidence in support of her race discrimination claim, Plaintiff states that Defendant replaced Plaintiff with a white male named Tim Steed. [(*Id.* ¶ 27.)]

(Doc. 6 at 1-6.)

Plaintiff's Complaint contains four claims: (1) Racially Hostile Work Environment, (2) Racial Discrimination, based on disparate treatment in discipline/demotion and termination; (3) Gender Discrimination, based on disparate treatment in termination; and (4) Retaliation, based on "work assignments, disciplines, [demotion], [termination] and . . . other adverse employment actions." (Doc. 1 ¶¶ 29, 39, 47, 55.) Defendant moved to dismiss plaintiff's Complaint based on her failure to allege a claim for relief.[3] (Doc. 4 at 1.) The Magistrate Judge recommends that defendant's Motion to Dismiss be granted as to plaintiff's claims for a racially hostile work environment, and her gender and race discrimination claims based on discrete adverse employment actions. (Doc. 12 at 5, 8, 10.) He recommends that defendant's Motion to Dismiss be denied as to plaintiff's retaliation claim. (*Id.* at 10.)

### III. DISCUSSION

**A. MOTION TO DISMISS STANDARD**

Defendant has moved to dismiss plaintiff's Complaint for failure to state a claim upon which relief can be granted. The purpose of such a motion, authorized by Rule 12(b)(6) of the Federal Rules of Civil Procedure, is to test the facial sufficiency of the plaintiff's

---

[3]Defendant moves to dismiss plaintiff's claims "[p]ursuant to Alabama Rule of Civil Procedure 12(b)(6)." (Doc. 4 at 1.) The court assumes this is merely a typographical error and that its Motion to Dismiss is made pursuant to Fed. R. Civ. P. 12(b)(6).

statement of a claim for relief. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1367 (11th Cir. 1997). "Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010)(internal citations and quotations omitted).

When addressing a 12(b)(6) motion to dismiss, the court accepts the allegations in the Complaint as true and construes those allegations in the light most favorable to plaintiff. *Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)(quoting *Am. Dental Ass'n*, 605 F.3d at 1288). To survive a Motion to Dismiss, "the complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id*. (quoting *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)))(internal quotations omitted). A claim is "plausible" if the facts are sufficient "to allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))(internal quotations omitted). Also, the court does not assume that plaintiff can prove facts she has not alleged or that defendant has violated the law in ways that have not been alleged. *Id*. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)). "While a complaint attacked by a

Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citations, brackets, and internal quotation marks omitted). "[W]hile notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

## B.  PLAINTIFF'S CLAIMS

### 1.  Gender and Race Discrimination Claims Based on Discrete Employment Decisions

Plaintiff objects to the recommendation that her gender and race discrimination claims based on discrete employment decisions be dismissed. With regard to her gender discrimination claim, she states:

> The Magistrate Judge failed to point to any "legal conclusions' in Plaintiff's complaint which are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1949-50 (quoting *Twombly*, 550 U.S. at 570). Nor did the Magistrate Judge articulate the Supreme Court's definition of "facial plausibility" or state why the plaintiff has not pleaded factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1951. Specifically, the Magistrate Judge failed to explain why it is not possible as a matter of law to reasonably infer that defendant discriminated against plaintiff on the basis of sex; nor did the Court reconcile

> its recommendation for dismissal with the pleaded facts' sufficiency, as recognized by several decades of Supreme Court precedent, to support an inference of liability under *McDonnell Douglas*. (Doc. 1 ¶¶ 6, 11, 25, 26).

(Doc. 14 at 9.) As to her race discrimination claim, she states:

> As with Plaintiff's gender discrimination claim, the Magistrate Judge has failed to point to "legal conclusions" in Plaintiff's complaint which are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1949-50 (quoting *Twombly*, 550 U.S. at 570). Nor did the Magistrate Judge articulate the Supreme Court's definition of "facial plausibility" or state why the plaintiff has not pleaded factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1951.

(Doc. 14 at 13.)

The Eleventh Circuit, in an unpublished opinion, held that a plaintiff alleging discrimination can meet the "plausibility standard" of *Iqbal* and *Twombly* by "alleging facts showing that similarly-situated [employees] outside her racial class were [treated] more favorabl[y]." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed. Appx. 935, 937 (2011). Indeed, such a proposition is supported by the ubiquitous *McDonnell Douglas* framework. The *McDonnell Douglas* framework consists of plaintiff's proof of a prima facie case of discrimination, defendant's articulation of a legitimate, nondiscriminatory reason for the adverse employment decision at issue, and plaintiff's proof that this articulated reason is unworthy of credence. "The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)(citing *Teamsters v. United States*, 431 U.S. 324, 358 and n.44 (1977)). "[T]he prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained,

are more likely than not based on the consideration of impermissible factors.'" *Id*. at 254 (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978). "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." *Id*.

Although a plaintiff alleging employment discrimination need not plead each element of a *McDonnell Douglas* prima facie case to survive a motion to dismiss, *see Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed. Appx. 935, 937 (11th Cir. 2011)(citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002))(unpublished), dismissal is inappropriate if each fact supporting a prima facie case is set forth in the complaint, *id*. (citing *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003)).

To establish a prima facie case of disparate treatment of race or gender discrimination, a plaintiff must "show four things: (1) that she was a member of a protected class, (2) that she was qualified for the job, (3) that she suffered an adverse employment action, and (4) that she was replaced by someone outside the protected class." *See Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir. 2000)(citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1290 (11th Cir. 1998); *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 963 (11th Cir. 1997); *Marks v. Prattco, Inc.*, 607 F.2d 1153, 1155 (5th Cir. 1979)).

In her Complaint plaintiff alleges that she is "a female of Native-American heritage. (Doc. 1 ¶¶ 4, 6.) These are protected classes – race and gender. Plaintiff alleged sufficient facts to demonstrate that she was qualified.[4] Plaintiff alleges she was demoted and terminated; these actions by the defendant constitute adverse employment decisions. Plaintiff alleges that after she was demoted defendant replaced her with a white female, and after she was terminated defendant replaced her with a white male – allegations sufficient to establish that defendant replaced plaintiff with employees outside her protected classes.[5]

The court finds that these facts are sufficient "to allow[ ] the court to draw the reasonable inference that the defendant is liable for" race and/or gender discrimination with regard to plaintiff's demotion and termination. *See Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). The Magistrate Judge's Recommendation that these claims be

---

[4]Plaintiff worked for defendant for several months before she was demoted, and she continued working after her demotion until she was terminated. "In cases where a plaintiff has held a position for a significant period of time, qualification for that position sufficient to satisfy the test of a *prima facie* case can be inferred." *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001)(quoting *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1495 n.2 (11th Cir. 1987))(internal quotations omitted).

[5]Despite recognizing that plaintiff has alleged she was replaced by white individuals, the Report and Recommendation states that "plaintiff has not alleged that she was treated less favorably than a similarly situated white individual." (Doc. 12 at 8 n.4.) However, an allegation that plaintiff was replaced by an individual outside the protected class is synonymous with an allegation that the individual was treated more favorably and plaintiff was treated less favorably based on the protected characteristic. *See Horn v. United Parcel Services, Inc.*, 433 Fed. Appx. 788, 792 (2011)(citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000); *Nix v. WLCY Radio/Rahall Comm'ns*, 738 F.2d 1181, 1185-86 (11th Cir.1984)); *Maynard*, 342 F.3d at 1289.

dismissed is rejected. Defendant's Motion to Dismiss plaintiff's gender and race discrimination claims based on discrete employment decisions will be denied.

### 2. RACIALLY HOSTILE WORK ENVIRONMENT

Plaintiff objects to the Magistrate Judge's recommendation that her hostile environment claim be dismissed. She states:

> Without discussing any Eleventh Circuit authority interpreting Supreme Court precedent, the Court appears to have concluded that the allegations of Plaintiff's hostile work environment claim fail to meet the "objectively offensive" element set forth in *Farragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). (See Doc. 12 at 9-10). Once again, however, the Magistrate Judge has failed to point to any "legal conclusions" in Plaintiff's complaint which are not "entitled to the assumption of truth." *Iqbal* 129 S. Ct. at 1949-50 (quoting *Twombly*, 550 U.S. at 570). Nor has the Court stated the reasoning which presumably mandates a conclusion that the plaintiff has failed to plead factual content with sufficient "facial plausibility" to "[allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1951. Furthermore, the Magistrate Judge has neither discussed nor applied Eleventh Circuit law, and has instead cited to several Eighth Circuit cases, despite the existence of Eleventh Circuit authority on point. (See Doc. 12 at 9).

(Doc. 14 at 16.)

The Magistrate Judge recommends that plaintiff's racially hostile work environment claim be dismissed based on the number of remarks related to plaintiff's Native American race. In the Report and Recommendation, the Magistrate Judge stated,

> It is believed that the court should consider only what is alleged in the complaint. Thus, the plaintiff's complaint should contain all improper remarks and the frequency of their repetition, as well as all other relevant evidence, as necessary to state a claim. It is not here declared, however, that the plaintiff must state all of her evidence, but enough to state a claim.

(Doc. 12 at 7.) The Magistrate Judge found that plaintiff's allegations fell short of what is required to show that the environment was objectively offensive. (*Id*. at 9-10.)

In her Complaint, plaintiff alleges that her supervisor, Glen Allgood, asked her specifically what race she was, to which she replied she was part Native American. (Doc. 1 ¶ 10.) Thereafter, according to plaintiff, Allgood "began making derogatory comments . . . such as calling her a 'Cherokee squaw', asked her to perform a rain dance . . ., called her a 'savage', asked her how to scalp people, and asked her if she carried a bow and arrow for protection." (*Id*. ¶ 11.) Also, plaintiff alleges that Allgood, who is white, made derogatory comments about African-Americans and that he said "plaintiff did not fit in with his kind." (*Id*. ¶¶ 12-14.) Moreover, the Complaint contains allegations that defendant segregated its work force. (*See id*. ¶ 16.)

The court finds plaintiff's Complaint is adequate to allege a hostile work environment created by discriminatory ridicule, intimidate, and insult based on race. Assuming that the specific incidents of derogatory comments represents a sample of the type of comments made by Allgood,[6] and considering all other incidents alleged in the Complaint, the court finds the allegations are sufficient to make a claim of racial harassment "plausible" against defendant. *See E.E.O.C. v. Ready Mix USA*, No. 2:09-cv-923-MEF-TFM, 2010 WL 3398991, *6 (M.D. Ala. Aug. 26, 2010). The facts alleged are sufficient to allow the court to assume that

---

[6]Plaintiff introduces the five "derogatory comments" set forth in paragraph 11 of her Complaint using the term "such as," thereby indicating the five derogatory comments were examples of the "derogatory comments" made by Allgood and not an exclusive list of single-use and isolated comments.

Allgood was concerned about race and that he divided his subordinates into two classes – whites ("his kind") and all other races (not "his kind").  According to the Complaint, he subjected those subordinates that were not "his kind" to ridicule and insult based on their race.  Whether the quantity and quality of Allgood's harassing behavior is sufficient, as a matter of law or as a matter of fact, to have created an objectively and subjectively hostile working environment is a question for a later day.

The court finds that the facts alleged in the Complaint are sufficient "to allow[ ] the court to draw the reasonable inference that the defendant is liable for" a racially-hostile work environment created by Allgood.  *See Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  The Magistrate Judge's Recommendation that this claim be dismissed is rejected. Defendant's Motion to Dismiss plaintiff's hostile environment claim will be denied.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that plaintiff's Written Objections to Magistrate's Order on Motion to Dismiss, (doc. 14), are is due to be sustained. An Order rejecting the Magistrate Judge's Report and Recommendation, (doc. 12), as to plaintiff's claims of race and gender discrimination and hostile work environment based on race and denying defendant's Motion to Dismiss, (doc. 4), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 5th day of January, 2012.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE